## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 05-38135-JAD |
| | : | |
| DAVID I. COHEN, | : | Chapter 7 |
| | : | |
| Debtor. | : | |
| _____X | : | |
| | : | |
| JEFFREY J. SIKIRICA, | : | Adversary No. 07-02517-JAD |
| CHAPTER 7 TRUSTEE, | : | |
| | : | |
| Plaintiff, | : | Document Nos. 1, 52 |
| | : | |
| v. | : | |
| | : | |
| DAVID I. COHEN and | : | |
| ELAINE COHEN, | : | |
| | : | |
| Defendants | : | |
| _____X | | |

## MEMORANDUM OPINION

This *Memorandum Opinion* constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The matter before the Court is an *Amended Complaint to Avoid Fraudulent Transfers* filed by Jeffrey J. Sikirica, Chapter 7 trustee (the "Trustee") of the estate of David I. Cohen (the "Debtor"), against the Debtor and his wife, Elaine Cohen ("Mrs. Cohen") (collectively the "Defendants"). The Trustee brought this fraudulent conveyance action pursuant to Pennsylvania fraudulent transfer law through the use of his strong arm powers under 11 U.S.C. § 544(b)(1). This is a core matter over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A) and (H) and 28 U.S.C. § 1334.

The instant adversary proceeding was originally assigned to the Honorable M. Bruce McCullough. Subsequent to his death, the matters were assigned to the Honorable Bernard Markovitz, who conducted a trial on October 19, 2011. After the parties submitted their post-trial briefs, Judge Markovitz resumed his retirement, and these proceedings were transferred to this Court. Following a status conference, this Court entered an order on August 16, 2012 reflecting the parties' consent to this Court's entry of a final judgment based on the record, pursuant to Fed. R. Bank. P. 9028 and Fed. R. Civ. P. 63. (Adv. No. 07-02517-JAD, Doc. # 136).[1]

In their *Post-Trial Brief*, the Defendants rely on the recent Supreme Court decision in <u>Stern v. Marshall</u>, --U.S.--, 131 S. Ct. 2594 (2011), to argue that this Court lacks the ability to enter a final judgment on the Trustee's state law claims. (Doc # 121, pp. 13 - 14). This Court rejects the Defendants' assertion because both parties have consented to the entry of final judgment by this Court. (<u>See</u> Doc. # 136). Such consent is sufficient to allow this Court to hear and finally determine the instant matters, regardless of whether they are statutorily defined as "core" or "non-core," pursuant to 28 U.S.C. § 157(c)(2). <u>ARDI Limited Partnership v. The Buncher Company</u>, (<u>In re River Entertainment Co.</u>), 467 B.R. 808 (Bankr. W.D. Pa. 2012) (parties' consent to entry of final judgment by the bankruptcy court permits final adjudication by non-Article III bankruptcy courts of non-core and core matters alike as <u>Stern v. Marshall</u> did not impact the consent provision of 28 U.S.C. § 157).

---

[1] All future docket citations refer to Adversary No. 07-2517-JAD, unless otherwise specifically noted.

For the reasons set forth below, the Court will grant judgment in favor of the Trustee and against the Debtor and Mrs. Cohen jointly and severally, on the Trustee's fraudulent transfer action in the amount of $488,615.79.

## I.

The instant action evolved out a dispute between Titus and McConomy ("T&M"), a now disbanded law firm, and the owner of its former office building, TrizecHahn Gateway, LLC ("Trizec"). Following T&M's dissolution in July 2000, Trizec brought suit against T&M and its general partners, including the Debtor, in their individual capacities (the "Trizec Defendants") in the Court of Common Pleas for Allegheny County (the "Common Pleas Court") claiming breach of a commercial lease obligation (the "Lease Litigation"). On June 27, 2005, the Common Pleas Court entered a verdict against the Trizec Defendants. On June 7, 2006, following the adjudication of post-trial motions, the Common Pleas Court entered a final amended judgment, which vacated judgment as to some of the Trizec Defendants, but held the rest, including the Debtor, jointly and severally liable for approximately $3,274,000 (the "Judgment Defendants"). To recover on its judgment, Trizec brought fraudulent transfer suits against eight of the Judgment Defendants in the Common Pleas Court ("State Court Lawsuits").

Owing to the nature of partnership liability, this dispute shares similar legal issues with cases Trizec has brought against several other former T&M partners in both state and federal court. Prior to his retirement, the Honorable Bernard Markovitz issued opinions in two cases involving two of the former

T&M partners: <u>Cardiello v. Arbogast</u> (<u>In re Arbogast</u>), 466 B.R. 287 (Bankr. W.D. Pa. 2012), <u>aff'd</u>, 2012 WL 4056093 (W.D. Pa. 2012); <u>Bohm v. Titus</u> (<u>In re Paul H. Titus</u>), 467 B.R. 592 (Bankr. W.D. Pa. 2012). While the legal issues are similar to the instant action, the facts before this Court are unique.

<u>A.</u>

The Defendants in the instant dispute routinely deposited their paychecks into their marital accounts at PNC Bank and Fidelity Investments (the "Entireties Account") throughout the entirety of their marriage. The Debtor has been practicing law for over 35 years; at all times relevant to this adversary proceeding, the Debtor worked as an attorney for Cohen & Grigsby, P.C. ("Cohen & Grigsby") as a contract employee and non-voting member of the firm's board of directors. (<u>See</u> Plaintiff's Exhibit 43). During the course of his 35-year career, the Debtor has deposited his paychecks into the Entireties Accounts; during his time at Cohen & Grigsby, the Debtor had his paychecks directly deposited. Mrs. Cohen is currently retired and suffering from a serious illness. Before she retired in 2001, Mrs. Cohen worked as a teacher for approximately 21 years and contributed her earnings to the Entireties Account. Now retired, she receives Public School Employees' Retirement System ("PSERS") pension payments, which she also contributes to the Entireties Account.

On October 14, 2005, after the Common Pleas Court entered its initial judgment in favor of Trizec but before it entered its final judgment, the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy

Code. Following the Debtor's bankruptcy filing, Trizec filed for relief from the automatic stay, which this Court granted, but limited the scope to the Common Pleas Court's disposition of post-trial motions. (See Case No. 05-38135-JAD. Doc. # 44).

### B.

On October 11, 2007, the Trustee initiated this adversary proceeding by filing its *Complaint* against the Defendants; pursuant to a court order entered on January 20, 2010, the Trustee filed its *Amended Complaint* on February 14, 2010. Therein, the Trustee argues that the Debtor's deposits into the Entireties Account which were not subsequently spent on necessary living expenses constitute fraudulent transfers under Pennsylvania law, and therefore seeks recovery of $1,190,734.74 pursuant to 11 U.S.C. §§ 544, 548, and 550, and 12 Pa. C.S.A. §§ 5104 and 5105. (See Case No. 07-38135-JAD, Doc. # 122).[2]

The Defendants argue in response that the Trustee's claims should fail because the deposits to the Entireties Account do not constitute transfers and were made without any intent to hinder or defraud creditors, the Trustee cannot establish that the Debtor was insolvent, and the Debtor received reasonable value in exchange for the deposits.

A trial was held before the Honorable Bernard Markovitz on October 19, 2011. Both parties filed their *Post-Trial Brief* on November 18, 2011. The matter is now ripe for discussion.

---

[2] In his *Post-Trial* Brief, the Trustee withdrew his claims regarding transfers that occurred after the date of filing; the Trustee is challenging only transfers that occurred between October 14, 2001 and October 14, 2005. (Case No. 07-38135-JAD. Doc. # 122, pp. 14 - 15).

**II.**

The Trustee pursues this fraudulent conveyance action pursuant to 11 U.S.C. § 544(b)(1), which allows a bankruptcy trustee to "avoid any transfer of an interest of the debtor in property...that is voidable under applicable [nonbankruptcy] law by a creditor holding an unsecured claim [against the debtor's bankruptcy estate]."

The Trustee's *Amended Complaint* sets forth three counts. The first count pleads an actual fraudulent transfer action pursuant to Pennsylvania's version of the Uniform Fraudulent Transfer Act codified at 12 Pa. C.S.A. § 5104.[3] The latter two counts plead constructive fraudulent transfer actions also pursuant to 12 Pa. C.S.A. §§ 5104(a)(2)(ii) and 5105.[4]

---

[3] 12 Pa. C.S.A. § 5104(a)(1) and (2)(ii) provides, in pertinent part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

[4] 12 Pa. C.S.A. § 5105 provides the following:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

The gravamen of the Trustee's *Amended Complaint* is that, subsequent to T&M's dissolution, the Debtor fraudulently transferred assets when he directed Cohen & Grigsby, his employer at all times relevant to this action, to deposit his paychecks directly into the Entireties Account. The basis of the Trustee's claim is that by directing Cohen & Grigsby to deposit his paychecks to the Entireties Account, the Debtor transferred those assets, and such transfers were fraudulent either actually or constructively, because the transfers placed the assets beyond the reach of the Debtor's creditors.

Pursuant to 12 Pa. C.S.A. § 5104(a)(1), the Trustee claims that the Debtor engaged in such transfers with actual intend to hinder, delay, or defraud his creditors, including Trizec. Pursuant to 12 Pa. C.S.A. §§ 5104(a)(2)(ii) and 5105, the Trustee pursues such alleged fraudulent transfers on the ground that the debtor made such transfers without receiving reasonably equivalent value in exchange, and that he was either insolvent at the time of or was rendered insolvent by such transfers.

As relief, the Trustee seeks recovery pursuant 12 Pa. C.S.A. § 5108(b)(1), which is similar to 11 U.S.C. § 550(a)(1) of the Bankruptcy Code. To the extent a transfer is avoidable, 12 Pa. C.S.A. § 5108(b)(1) allows the creditor to recover a judgment for the value of the asset transferred from the initial transferee of the asset or the person for whose benefit the transfer was made. The theory behind such relief is that the Debtor transferred assets into the Entireties Account, which Pennsylvania law deems a separate legal entity owned by both

the Debtor and Mrs. Cohen, making the Debtor and Mrs. Cohen the initial transferees of the challenged deposits.

This Court will analyze first the Trustee's actual fraudulent transfer claims, and then his claims for constructive fraudulent transfers

### III.

Although there is a split of opinion as to the proper burden of proof in an intentional fraudulent transfer cause of action, this Court is of the opinion that, pursuant to <u>Grogan v. Garner</u>, the proper standard of proof is by a preponderance of the evidence. In applying the preponderance standard to fraud claims brought under 11 U.S.C. § 523, the Grogan Court held that "[b]ecause the preponderance of the evidence standard results in a roughly equal allocation of the risk of error between litigants we presume that this standard is applicable in civil actions between private litigants unless particularly important individual interests are at stake." 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). Although the Grogan court did not directly address transfer avoidance, this Court finds that the same rule governs the Trustee's instant action under § 548(a)(1)(A). <u>See</u> <u>Dobin v. Hill</u> (<u>In re Hill</u>), 342 B.R. 183, 197 (Bankr. D.N.J. 2006); David B. Young, Preferences and Fraudulent Transfers, 849 PLI/Comm 729, 860-62 (2008) ("The strong current of opinion now holds that actual fraudulent intent under 11 U.S.C. § 548(a)(1)(A) need only be shown by a preponderance of the evidence. ... most decisions since Grogan have held that the same rule governs in actions under § 548(a)(1)(A).").

In order to establish an actual fraudulent transfer claim under Pennsylvania law, the Trustee must prove that the Debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor." 12 Pa. C.S.A. §§ 5104(a). The Trustee has failed to provide sufficient evidence to establish that Defendants are guilty of making the transfers with an actual intent to hinder, delay, or defraud their creditors.

12 Pa. C.S.A. § 5104(b) provides factors that this Court may consider in determining whether actual intent exists in this instant action. The Trustee has demonstrated the existence of some of these factors in the instant case: the transfer was to an insider; the Debtor retained control of the property transferred after the transfer; and the Debtor continued to deposit his paychecks into the Entireties Account after Trizec sued him. See 12 Pa. C.S.A. § 5104(b)(1), (2), (4).

Even though some of the factors set forth in § 5104(b) are satisfied, the Trustee failed to prove that the Debtor actually intended to hinder, delay, or defraud Trizec when he transferred his wages into the Entireties Account. As was the Defendants' custom for at least twenty years before the Trizec Litigation, they continued to deposit their paychecks into directly the Entireties Account after Trizec sued them. While Mrs. Cohen retired subsequent to the commencement of the Trizec Litigation, she deposited her monthly pension payments into the Entireties Account. Thus, the Trustee has not provided evidence sufficient to establish that the Debtor, after Trizec sued him, made any change in the way he handled his paychecks, or otherwise proven that the

Debtor acted with any actual fraudulent intent for purposes of 12 Pa. C.S.A. § 5401(a). This Court therefore finds that the Trustee's claims for actual fraudulent transfers must fail.

## IV.

This Court will next determine whether the Debtor's deposits into the Entireties Account constituted constructive fraudulent transfers pursuant to 12 Pa. C.S.A. §§ 5104(a)(2) and 5105. The Trustee may establish a constructive fraudulent transfer claim pursuant to 12 Pa. C.S.A. §§ 5104(a)(2) and 5105 by proving that the Debtor made the transfer without receiving reasonably equivalent value in exchange, and was insolvent at the time of the transfer or was rendered insolvent by the transfer. See 12 Pa. C.S.A. §§ 5104, 5105. A trustee must show a constructive fraudulent transfer by a preponderance of the evidence. Liebersohn v. Campus Crusade for Chris, Inc. (In re C.F. Foods, L.P.), 280 B.R. 103, 115 (Bankr. E.D. Pa. 2002).

To analyze the Trustee's constructively fraudulent transfer claims, this Court will first analyze the following preliminary issues: the appropriate look back period, whether the deposits constitute "transfers" under the statute, which party should carry the burden of proof, which of the proposed standards this Court will follow, and whether the Debtor was insolvent at the time of the transfers.

### A.

The Trustee is pursuing transfers the Debtor made to the Entireties Account between October 14, 2001 and October 14, 2005. The Trustee stands

in the shoes of the Debtor's unsecured creditors. See Moody v. Security Pacific Business Credit, Inc., 127 B.R. 958, 989, n. 6 (W.D. Pa. 1991), aff'd, 971 F.2d 1056 (3d Cir. 1992). So long as the applicable state law statute of limitations has not expired prior to the date the Debtor files for bankruptcy, the Trustee may bring an avoidance action pursuant to 11 U.S.C. § 544(b), within the time constraints imposed by 11 U.S.C. § 546(a) of the Bankruptcy Code. Glosser v. S&T Bank (In re Ambulatory Med. and Surgical Health Care, Inc.), 187 B.R. 888, 901 (Bankr. W.D. Pa. 1995). To challenge a fraudulent transfer pursuant to 12 Pa. C.S.A. §§ 5104(a)(2) and 5105, a creditor must bring the action within four years of the date of the allegedly fraudulent transfer. 12 Pa. C.S.A. § 5109.

The Trustee commenced this adversary proceeding on October 11, 2007, within two years of the Debtor's initial bankruptcy filing. Because the Trustee instituted the instant action before the limitations period set forth in 11 U.S.C. § 546(a) passed, the Trustee stands in Trizec's shoes, and therefore, he may challenge any transfer Trizec could have pursued on that date. Thus, the Trustee may challenge any transfers that the Debtor made, within four years preceding the date he filed for relief, between October 14, 2001 and October 14, 2005.

## B.

The parties disagree on whether the direct deposits that Cohen & Grigsby made into the Entireties Account constitute a transfer pursuant to 12 Pa. C.S.A. § 5101(b), which defines a transfer as "[e]very mode, direct or indirect...of disposing or parting with an asset or an interest in an asset." 12

Pa. C.S.A. § 5101. To the extent that property is exempt from collection by creditors under non-bankruptcy law, however, 12 Pa. C.S.A. § 5101(b) excludes the property from the definition of asset. Id. Under 42 Pa. C.S.A. § 8127(a), individuals' wages are exempt from creditors' collection efforts while in the hands of their employers; accordingly, such wages remain exempt until the individual receives them.

The Trustee relies on Reitmeyer v. Meinen (In re Meinen) for the principle that the deposit of a judgment debtor's own funds into an account owned by the entries is a transfer. 232 B.R. 827 (Bankr. W.D. Pa. 1999). The Defendants argue in response that the paychecks were at all times exempt because the Debtor never physically received them, the paychecks were not assets because they were exempt, and the paychecks therefore could not be transferred for purposes of 12 Pa. C.S.A. § 5101(b). (See Doc. # 121, pp. 5-6).

In both Arbogast and Titus, the Honorable Bernard Markovitz held that the direct deposits of the Judgment Defendants' salaries constituted indirect transfers that the debtors made themselves, without obtaining physical possession, and that 12 Pa. C.S.A. § 5101(b) expressly provides that such indirect transfers constitute transfers. Arbogast, 466 B.R. at 311; Titus, 467 B.R. at 617. This Court finds Judge Markovitz's analysis persuasive. This Court's conclusion is particularly acute as the Debtor no doubt had control over the funds, once they became payable by his employer.

Such an approach recasts the indirect transfer as two discrete transfers: (1) Cohen & Grigsby transferred control of the wages to the Debtor, and (2) the

Debtor then transferred his wages into the Entireties Account. <u>See Arbogast</u>, 466 B.R. at 311-12. Once the paychecks came into the Debtor's physical possession, custody, or control, they lost their exempt status. <u>Walsh v. Bosack (In re Bosack)</u>, 454 B.R. 625, 333 (Bankr. W. D. Pa. 2011). As such, they constituted an asset that the Debtor indirectly transferred within the meaning of § 5101(b). Cohen & Grigsby's direct deposits of the Debtor's compensation into the Entireties Account, therefore, constituted transfers the Debtor made himself for purposes of §§ 5104(a) and 5105, despite that the Debtor made the transfers indirectly.

<u>C.</u>

Both parties also dispute who shoulders the burden of proof with respect to whether the Debtor's deposits of his funds into an Entireties Account were subsequently used by the Defendants to purchase necessities. The Trustee urges the Court to place the burden of proof on the Defendants to show by a preponderance of the evidence that they spent the deposits on necessities. The <u>Meinen</u> court imposed the burden on the defendant because it believed that the defendant's use of deposits to satisfy necessities constituted an affirmative defense, for which the burden of proof is typically on defendants. <u>Meinen</u>, 232 B.R. at 844.

The Defendants argue that this Court should place the burden of proof on the Trustee, as did the court in <u>Arbogast</u>, where the court based its decision on Committee Comment 6 to the Pennsylvania Fraudulent Transfer Act and cases interpreting the same. <u>Arbogast</u>, 466 B.R. at 307-08. Pennsylvania case

-13-

law interpreting the Pennsylvania Uniform Fraudulent Conveyance Act, the precursor to the Pennsylvania Uniform Fraudulent Transfer Act, shifted the burden to the party seeking to uphold the transfer after the creditor established that the transferor was in debt. Committee Comment 6 to § 5102, however, indicates that the previous burden shifting approach is archaic, has not been uniformly followed by courts, and should not be followed by courts interpreting the Pennsylvania Uniform Fraudulent Transfer Act.[5] 12 Pa. C.S.A. § 5102, Committee Comment 5. See also Fidelity Bond and Mortg. Co. v. Brand, 371 B.R. 708, 716–21(E.D. Pa. 2007) (declaring that Committee Comment 6 to § 5102 rendered inapplicable the prior Pennsylvania case law shifting the burden to the party seeking to validate the transfer). However, the Arbogast court, recognizing that "[s]hifting the burden of producing evidence is not the same things as shifting the burden of persuasion," imposed on the defendants "the burden of producing at least some useful evidence regarding what the funds deposited into an entireties bank account are ultimately spent on." Arbogast, 466 B.R. at 307-08.

---

[5] Committee Comment 6 to § 5102 provides:

> However, certain cases applying prior Pennsylvania law have stated in effect … that if a creditor establishes that the transferor was in debt at the time of a transfer, the burden shifts to the parties seeking to uphold the transfer to establish that the transferor received reasonably equivalent value or met the financial conditions required by 12 Pa. C.S.A. §§ 5104(a)(2) and 5105. Stinner v. Stinner, 300 Pa. Super. 351, 446 A.2d 651 (1982); In re Glenn, 108 Bankr. 70 (Bankr. W.D. Pa. 1989). That principle is an archaism and has not been consistently followed (compare, e.g., In re Joshua Slocum, Ltd., 103 Bankr. 610 (Bankr. E.D. Pa. 1989), aff'd mem., 121 Bankr. 442 (E.D. Pa. 1989)), and in any event should not be followed in applying this chapter.

This Court will adopt the burden of proof and burden of production set forth by the Arbogast court. The Court finds the Arbogast approach to be more persuasive because the Meinen court rendered its decision only five years after the Pennsylvania Fraudulent Uniform Fraudulent Transfer Act replaced the Pennsylvania Uniform Fraudulent Conveyance Act, and courts have subsequently concluded that Committee Comment 6 to § 5102 shows legislative intent to shift the burden of proof to party who seeks to avoid the transfer. See 12 Pa. C.S.A. § 5102, Committee Cmt. 6 (1993); Fidelity Bond and Mortgage Co. v. Brand, 371 B.R. 708, 716–2 (E.D.Pa. 2007); Castle Cheese, Inc. v. MS Produce, Inc., 2008 WL 4372856 at 22–24. Furthermore, in affirming the rulings in Arbogast on appeal, the United States District Court for the Western District of Pennsylvania concluded that "Judge Markovitz properly allocated the burden of persuasion to the Trustee," and held that "[e]ven though the question of whether deposits into a joint checking account may be protected from creditors because they were spent on 'necessities' bears many of the characteristics of an affirmative defense, under Pennsylvania law the burden of proof remains with the Trustee throughout." Cardiello v. Arbogast, 2:12-CV-353, 2012 WL 4056093 (W.D. Pa. Sept. 14, 2012).

Thus, the Trustee must prove by the preponderance of the evidence that (1) the Debtor failed to receive reasonably equivalent value in exchange for the direct deposits of his wages in to the Entireties Account, and (2) he was either insolvent at the time of, or was rendered insolvent by, such transfers. However, this Court will impose on the defendants the burden of producing at least some

useful evidence to demonstrate how they spent the deposited funds. Absent the production of some evidence, the Trustee will be deemed to have met his burden of proof.

D.

The parties also dispute the correct standard under which this Court should analyze whether the Debtor received "reasonably equivalent value" in exchange for the transfers to the Entireties Account. 12 Pa. C.S.A. §§ 5104, 5105.

The Defendants urge the Court to adopt the standard set out in the Common Plea's Court's ruling in the State Court Lawsuits, wherein the defendants failed to receive reasonably equivalent value for the deposits only if (1) the non-debtor spouse withdrew or otherwise executed control over the deposited funds, (2) the non-debtor spouse spent the deposited funds to acquire luxury items above basic living expense, and (3) the non-debtor spouse benefited from the luxury items purchased. (Doc. # 121, pp. 8). See also Trizechahn Gateway, LLC v. Paul H. Titus et ux, at GD-07-008496.

The Trustee asserts instead that this Court should follow Meinen and the cases cited therein which support the Trustee's argument that transfers to an Entireties Account can be exchanged for "reasonably equivalent value" if the funds were spent on "reasonable and necessary household expenses" for the maintenance of the Debtor and the Debtor's family. Meinen, 232 B.R. at 842–43. The Meinen court cites three Pennsylvania cases for the proposition that funds contributed by an insolvent debtor into an account held as tenants by

-16-

the entirety with a non-debtor spouse will be considered as given in exchange for reasonably equivalent value, if the funds are subsequently used to pay for "reasonable and necessary" household expenses. Meinen, 232 B.R. at 843.[6]

Because Meinen was dictated by binding Pennsylvania precedent, and Judge Wettick's ruling in the State Court Lawsuits "is not based on any existing authority," Titus, 467 B.R. at 608, this Court adopts the Meinen standard that "an insolvent debtor's deposits of his or her own funds into an entireties account are not fraudulent as to said debtor's creditors to the extent that said funds are then used to satisfy reasonable and necessary expenses for the maintenance of said debtor's family." Meinen, 232 B.R. at 842. Thus, to prove that the Debtor did not receive reasonably equivalent value in exchange for the direct deposits, the Trustee must prove by the preponderance of the evidence that the Defendants failed to use the deposited funds to pay for reasonable and necessary household expenses.

## E.

In addition to proving that the Debtor did not receive reasonably equivalent value in exchange for the transfers to prove that the transfers were constructively fraudulent pursuant to 12 Pa. C.S.A. §§ 5104 and 5105, the Trustee must prove that the Debtor was insolvent at the time of, or made

---

[6] See, e.g., Welker v. Strohmeyer, 45 Berks 21, 29 (1952) ("The Chancellor is aware of the principal that an insolvent's expenses for the maintenance of his family, if shown to be reasonable and necessary, may be a legitimate employment of his money in hand, and will not in such case be considered a conveyance fraudulent in law as to his creditors."); Watters v. Demilio, 16 Pa. D. and C.2d 747, 752 (listing expenses for food, clothing, medical treatment, and taxes on real estate held as tenants by the entirety as necessary for the support and maintenance of the debtors family).

insolvent by, the transfers. "A debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." 12 Pa. C.S.A. § 5102(a). "Assets under this section do not include property ... that has been transferred in a manner making the transfer fraudulent under this chapter." 12 Pa. C.S.A. § 5102(d). Also excluded from the computation of value of a debtor's assets are exempt property and property held as tenants by the entirety to the extent that such tenancy cannot be severed by a creditor of only one tenant. 12 Pa. C.S.A. § 5102, Committee Cmt. 1 (1993).

The Court holds that the debtor was insolvent during the look back period, from October 14, 2001 to October 14, 2005. The Court so holds because all of the Debtor's wages were directly deposited into the Entireties Account; accordingly, the Court cannot count the value of the Debtor's wages directly deposited into the Entireties Account as an asset for the purposes of insolvency pursuant to § 5102(a). The Court will not consider such deposits an asset for assessing the value of the Debtor's assets for § 5102(a)'s purposes because such direct deposits became exempt when the Debtor transferred them into the Entireties Account.

The Defendants claim that the Debtor had no assets during the look back period should not be fatal to their defense because they contend that, during such look back period, they had no debt. According to the Defendants, they did not have liability for Trizec's claim because (1) such claim was not reduced to judgment until June 7, 2006, (2) such claim was consequently not liquidated until after the applicable look back period ended, and (3) such claim

was still subject to genuine dispute by virtue of appeals that did not conclude until July 3, 2007, also after the look back period.

The Court rejects the argument that the Debtor's liability for Trizec's claim cannot be counted for testing insolvency pursuant to § 5102(a). Several definitions in § 5101(b) dictate that the Debtor's liability for such claim be counted: "debt" is defined as "[l]iability on a claim", and "claim" is defined as "[a] right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured." 12 Pa. C.S.A. § 5101(b). The Debtor's liability for Trizec's claim counted for testing insolvent pursuant to § 5102(a) regardless of whether the claim was reduced to judgment, liquidated, or subject to dispute. The Debtor was named in the State Court Lawsuits in July 2000; thus, the Debtor was insolvent throughout the entirety of the look back period.

## V.

To summarize, this Court holds that the appropriate look back period is from October 14, 2001 to October 14, 2005, during which time the Debtor was insolvent for purposes of the Pennsylvania fraudulent transfer statutes, the Debtor's deposits to the Entireties Account are transfers pursuant to 12 Pa. C.S.A. § 5101(b), and the burden of proof is on the Trustee to prove that the deposits were not spent on reasonable and necessary expenses, although the Defendants must produce some evidence to show what they purchased.

The Trustee has produced extensive exhibits challenging the following six categories of transfers: (a) education expenses for the Defendants' children; (b)

contributions to the Debtor's retirement plan; (c) premium payments and dividend reinvestments resulting in an increase in the value of the Debtor's insurance policies; (d) credit card expenditures; (d) various unknown expenditures; and (f) various unknown deposits. This Court next will determine whether the Trustee met his burden with regard to each category in turn.

<u>A.</u>

The Trustee first challenges $102,573.00 in payments the Defendants allegedly made for their son and daughter's post-secondary educations, including $46,059.97 for their son's undergraduate education, $7,562 for their daughter's undergraduate education, and $39,205 for their daughter's graduate education.

With respect to these educational advances, the Trustee's theory of recovery is that parents residing in Pennsylvania have no legal duty to provide for the education of their children beyond the age of 18 or the completion of high school, whichever occurs later. The Trustee cites the Pennsylvania Supreme Court's decision in <u>Blue v. Blue</u>, 532 Pa. 521, 529, 616 A.2d 628 (Pa. 1992), for the principle that parents are not responsible for the educational support of their children past high school. The Trustee thus argues that because Pennsylvania law does not require parents to pay for their children's post-secondary education, such education is not a necessity, and he may therefore recover payments the Defendants made for post-secondary education of their children.

The Defendants dispute the Trustee's claim for several reasons. As to the Blue opinion, the Defendants claim it merely holds that the Pennsylvania legislature, not the courts, should determine whether parents have a duty to contribute to the payment of their children's post-secondary education. According to the Defendants, the Pennsylvania legislature provided such guidance less than a year after Blue by enacting the Post-Secondary Educational Costs Act (the "PSECA"). 23 Pa. C.S.A. § 4327. This statute required separated, divorced, or unmarried parents to provide postsecondary education support to their adult children. The Pennsylvania Supreme Court, however, declared the statute unconstitutional because it required only separated, divorced, or unmarried parents to provide postsecondary education in violation of the equal protection clause of the Fourteenth Amendment. Curtis v. Kline, 542 Pa. 249, 258, 666 A.2d 265, 269–70 (Pa. 1995).

While the Pennsylvania legislature has not yet enacted a statute that requires parents to pay for their children's post-secondary education, this Court holds that such expenses are reasonable and necessary for the maintenance of the Debtor's family for purposes of the fraudulent transfer statutes only. This holding, however, is limited to payments the Defendants made for the children's undergraduate education as such children in graduate school are well into adulthood.[7]

---

[7] The Pennsylvania Post-Secondary Education Act was limited to requiring payment for the costs for undergraduate or vocational education. The statute further states, "[t]he duty of a parent to provide a postsecondary education for a child is not as exacting a requirement as the duty to provide food, clothing

After the Defendants meet their initial burden of production, the Trustee may only recover if he proves by the preponderance of the evidence that the Defendants used funds from the Entireties Account to pay for their daughter's graduate school education. The Trustee failed to meet his burden. During trial, the Trustee focused his inquires on payments the Defendants made for their son's undergraduate education. (Doc. # 139, p. 67). With regard to his daughter, the Debtor testified she received money from her grandmother and still had student loans in excess of $125,000. (Doc. # 139, p. 129: 11-22). Because the Trustee failed to meet his burden in proving that the daughter's graduate school expenses were paid from funds in the Entireties Account, the Court denies his requested relief.

<u>B.</u>

The Trustee also challenges contributions that the Debtor made to his Cohen & Grigsby retirement plan ("Retirement Plan"). According to the Trustee, the contributions made to the Retirement Plan are avoidable as fraudulent transfers because deposits of the Debtor's earnings "into a retirement account is similar in one critical way to a deposit of [the] Debtor's earnings into an entireties account: the deposit shields the amount deposited from claims of creditors." (Doc # 122, pp. 7). The Trustee asserts that the contributions are fraudulent transfers, and the Debtor's claimed exemption of the retirement fund should be denied on that basis.

---

and shelter for a child of tender years unable to support himself."  23 Pa. C.S.A. § 4327.

During trial, the parties stipulated that the Debtor did not contribute to the Retirement Plan over the look back period. (Doc. # 139, p. 28: 7-12). A similar situation arose in <u>Arbogast</u>, where the debtor's employer directly deposited his retirement account contributions into a retirement account. The court held that none of the contributions that the debtor made to his retirement account could constitute fraudulent transfers, either directly or indirectly, "because [the debtor] lacked control over such contributions, that is he did not have the power to choose between deferring such compensation or instead receiving the same as a present paycheck." <u>Arbogast</u>, 466 B.R. at 325. Thus, the key inquiry is whether the Debtor could have voluntarily opted out of Cohen & Grigsby's 401k plan, and instead, convert the 401k payments into an increase in his salary.

As there were apparently confidentiality issues with entering the complete terms of the Retirement Plan, the Trustee entered a single page that contains a provision providing employees with an election not to participate in the plan. (<u>See</u> Plaintiff's Exhibit 43). The Defendants further stipulated that the preceding page was included in the Retirement Plan. (Doc # 120).

The Debtor, however, testified that as he understood the plan, Cohen & Grigsby did not approve of elections not to participate. (Doc. # 139, p. 59: 1-4). Furthermore, as reflected in the Debtor's employment proposal letter, the pension was consideration for his employment, separate from his base salary. (Plaintiff's Exhibit 43). In addition, according to the Debtor, the Retirement Plan specifically provides that the benefits payable under the plan may not be

alienated or assigned. Lastly, while that portion of the plan which the Trustee presented to this Court does provide for an election not to participate, that election is permissive and "subject to the approval of the Employer." (Id.) The Trustee has not proven to this Court that if the Debtor could have elected to not participate in the plan, that his employer would have approved of such election, or that the Debtor would have been able to instead receive the same as a present paycheck.

Therefore, this Court finds that the contributions to the Debtor's Retirement Plan are not fraudulent transfers under Pennsylvania law. This Court does note, however, that the Arbogast court permitted the trustee and creditor to pursue recovery of the retirement account contributions through an objection to exemption. The Court, therefore, requires the Trustee and Trizec to pursue recovery of funds contributed to the Debtor's Retirement Plan through their objections to exemptions.[8]

### C.

With regard to the Debtor's life insurance policies, the Trustee seeks to avoid, as fraudulent transfers, only those premium payments and dividend reinvestments that resulted in an increase in the cash value of such policies

---

[8] Both the Trustee and Trizec have filed objections to the Debtor's exemptions within the lead bankruptcy case number 05-38135. The objections remain under advisement pursuant to a trial held before the Honorable Bernard Markovitz on October 19, 2011. (See Case No. 05-38135, Doc. # 150). Pursuant to the issuance of this *Memorandum Opinion*, the Court will schedule a status conference for adjudication of the objections.

during the look back period.[9] The Trustee predicates his challenge on the general principle that transfer of the Debtor's assets to any vehicle that places the assets beyond the reach of the debtor's creditors is fraudulent. See Taylor v. Kaufhold, 379 Pa. 191, 108 A.2d 713 (Pa. 1954); Corbett v. Hunter, 292 Pa.Super. 123, 436 A.2d 1036 (Pa. Super. 1981). Because the Debtor did not purchase any of the insurance policies during the look back period, the Defendants argue that no transfer occurred, and the Trustee therefore may not avoid the increase in the life insurance policies' cash values as fraudulent pursuant to Pennsylvania law.

The Trustee does not challenge the purchase of the life insurance policies; rather he challenges the premium payments that the Debtor paid to maintain the two Guardian Life Insurance Policies, which the Debtor listed as Irrevocable Life Insurance Trusts to which he has no interest. (Plaintiff's Exhibit 22). During trial, the Trustee preponderantly proved that the Trust owns no assets other than the Guardian Life Policies and that the Debtor made all premium payments required to maintain the polices in effect.

The Arbogast court asserted that it did not need to determine whether "all, or any portion of the … [insurance] premium payments were actually funded with the direct deposits of the [d]ebtor's salary that were made the

---

[9] The insurance policy values increased by the following amounts during the look back period: (a) Guardian Life Insurance Policy No. 3952537 - $56,313.00; (B) Guardian Life Insurance Policy No. 3932912 - $91,005.00; (c) Northwestern Mutual Life Insurance Policy No. 11533611 - $11,297.44; (d) Northwestern Mutual Life Insurance Policy No. 11162744 - $2,801.57; (d) Northwestern Mutual Life Insurance Policy No. 8418985 - $2,989.12; and (f) Northwestern Mutual Life Insurance Policy No. 7266638 - $ 747.85. (Plaintiff's Exhibits 37, 39).

[e]ntireties [c]hecking [a]ccount," because the court held that "the purchase of life insurance to benefit a spouse constitutes a necessity, and ... that the [d]ebtor received reasonably equivalent value in return for any of the direct deposits of his salary that may have been utilized to fund such purchase." Arbogast, 466 B.R. at 319–20.

This Court holds that the purchase of life insurance policies to benefit a spouse, or the payment of premiums required to maintain the policies in effect, constitutes an expense reasonable and necessary for the maintenance of the Defendants' household. This Court thus finds that the Debtor received reasonably equivalent value in return for any of the direct deposits of his salary that he may have used to fund such premiums.

### D.

The Trustee also challenges credit card expenses to the extent that they were satisfied with Entireties Account funds and were not reasonable and necessary expenses for the maintenance of the household. To prove that the Defendants did not use certain deposited funds to purchase necessities, the Trustee devised a system whereby he scoured the Defendant's Capital One and Visa credit card statements (the "Credit Cards") and produced five itemized lists broken down by categories.[10] During trial, the Trustee walked the Debtor through the itemized lists and asked the Debtor to point out any items that

---

[10] The Trustee challenges expenditures that the Defendants made with their Capital One Card broken down by categories: (1) travel - $22,762 (Plaintiffs Exhibit 41A); (2) wine and spirits - $2,601.66 (Plaintiffs Exhibit 41B); (3) entertainment $804.44 (Plaintiffs Exhibit 41C); (4) vehicle repairs - $180.89 (Plaintiffs Exhibit 41 D); and (5) local car rentals - $180.89 (Plaintiffs Exhibit 41 E). (Adv. No. 07-2517-JAD, Doc # 122, pp. 14–15).

were out of place or were business expenses for which the Debtor's employer would have reimbursed him. With regard to each category, the Trustee must prove by the preponderance of the evidence that the Defendants used funds from the Entireties Account to purchase the items listed, and that the items purchased were not reasonable and necessary household expenses.

During trial, the Debtor testified that he and his wife paid the Credit Cards with funds from the Entireties Account. (Transcript p.70 6-8). The Court will now consider whether each of the Trustee's categories represents expenses not reasonable and necessary for the maintenance of the Defendant's family.

In the travel category, the Trustee compiled a list of expenses that the Defendants incurred for travel expenses such as airfare, hotels, and cruises. The Trustee preponderantly proved that many of these expenses were not reasonable and necessary. The Debtor, however, testified that certain expenses listed were business expenses. Such business expenses are reasonable and necessary; in fact, the Debtor's employer reimbursed him for such expenses. (Transcript p. 71). The Trustee met his burden with regard to expenses listed in the travel category, except for those expenses that the Debtor testified he incurred in the course of business. Thus, the Trustee may recover $21,634.61 from the travel category.

In the wine and spirits category, the Court holds that expenses incurred to purchase wine and spirits do not constitute reasonable and necessary household expenses. While the Debtor explained that he used the wine tasting group to interact with business contacts, he admitted the group was more of a

social group than a business group. (Doc. # 139, p. 92: 15-20). The Trustee therefore met his burden with regards to this category, and may recover $2,601.66.

In the entertainment category, the Trustee listed charges for various events: the Benedum Center, Pittsburgh Pirates and Steelers games, a racetrack, and golf. This Court finds that such expenses are not reasonable and necessary for the maintenance of the Defendant's family. The Debtor was unable to provide evidence of, or otherwise identify, any of the entertainment related charges that were business related; thus, the Trustee met his burden and may recover $804.44.

The Trustee failed to meet his burden in the vehicle expenditures category, as this Court finds that these expenses were reasonable and necessary for the maintenance of the household. While the Trustee identified certain expenses incurred to repair the Debtor's Jaguar, he failed to prove by the preponderance of the evidence that such repairs are not reasonable or necessary. It is both reasonable and necessary that the Defendants would spend their income to repair their car. The Trustee thus may not recovery expenses listed in the vehicle expenditures category.

The Trustee also failed to satisfy his burden in the local car rental category, because the Debtor stated that he sometimes rents cars both for business and for transportation when his other car needed to be repaired. Both are reasonable and necessary expenses; therefore, the Trustee may not recovery expenses listed in this category.

In summary, the Trustee has proved by the preponderance of the evidence that the Defendants used funds from their Entireties Account to satisfy their credit card bills, and that the travel, wine and spirits, and entertainment, categories of expenses were not reasonable and necessary household expenses, and were therefore fraudulent transfers pursuant to Pennsylvania law. The Trustee may therefore recover $25,040.71.

<u>E.</u>

The Trustee next seeks to avoid expenditures that the Defendants made from the Entireties Account totaling $463,575.08, for which the Defendants have not provided any evidence of what was purchased with these funds. Because each one of these transactions is monetarily significant, the Trustee brought them into the scrutiny of this litigation to compel the Defendants to prove that they made the expenditures to satisfy a reasonable and necessary household expense. The Trustee must prove by the preponderance of the evidence that the Defendants failed to use the deposited funds to purchase necessities. However, as asserted in <u>Arbogast</u>, the burden is on the defendants to produce at least some evidence regarding what they purchased with the deposited funds.

During trial, the Trustee asked the Debtor whether he could tell the Court what these funds were used to purchase. The Trustee specifically asked the Debtor, "[i]f I were to ask you to review these nine pages to determine the purpose for which the checks here have been drawn, do you have access this afternoon to information that would enable you to answer that question?"  The

Debtor responded that he believed that the statements were accurate, but could not answer what was purchased with said funds. (Doc. # 139, p. 10: 2-7). This Court therefore finds that the Defendants failed to satisfy their initial burden of producing some evidence regarding what they purchased with the deposited funds; as such, the Trustee may recover $463,575.08 in unknown purchases from the Entireties Account.

### F.

The Trustee also challenges $251,957.59 in deposits into the Entireties Account from unknown sources. After removing payments made into the Entireties Account that were deposited on account of either the Debtor's employment or Mrs. Cohen's employment, the Trustee produced a list of deposits from unknown sources. Having failed to establish the source of the Entireties Account funds, the Trustees argue, the Debtor failed to establish the funds were spent on reasonable and necessary expenses.

Although the uncertainty of the source of the funds is suspicious, the Trustee needed to produce some evidence that the funds deposited were payable to the Debtor, or were otherwise under his custody and control. Having produced no evidence in that regard, this Court finds that the Trustee has failed to meet his burden of proof.[11] Therefore, this Court finds that the Trustee may not recover any deposits made into the account from unknown sources.

---

[11] By way of example, the funds could have emanated from an inheritance to Mrs. Cohen only. Such a hypothetical reflects the funds could conceivably not have been the Debtor's.

**VI**.

In conclusion, the Trustee has established that the Debtor fraudulently transferred assets in the amount of $488,615.79 under the Pennsylvania Uniform Fraudulent Transfer Act; pursuant to 12 Pa. C.S.A. § 5108(b)(1), the Defendants are liable to the Trustee for said amount. An appropriate Order shall be entered.

**Date**: _October 31, 2012_          _/s/ Jeffery A. Deller_
                                **JEFFERY A. DELLER**
                                United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
    John P. Vetica, Jr., Esq.
    Robert O. Lampl, Esq.
    Office of the U.S. Trustee