## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| DAVID I. COHEN, | : | Bankruptcy No.  05-38135JAD |
| | : | |
| Debtor, | : | Chapter 7 |
| | : | |
| JEFFREY J. SIKIRICA, Trustee for | : | Adv. No.  07-2517JAD |
| the Bankruptcy Estate of DAVID I. | : | |
| COHEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID I. COHEN and ELAINE COHEN, | : | |
| husband and wife, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM OPINION

Pursuant to a fraudulent transfer action brought by the Chapter 7 Trustee, this Court issued a Memorandum Opinion dated October 31, 2012 finding that assets in the amount of $488,615.79 had been fraudulently transferred by the Defendants under the Pennsylvania Uniform Fraudulent Transfer Act.  On appeal, the United States District Court for the Western District of Pennsylvania remanded for further proceedings consistent with its opinion on the specific issue of recovery by the Trustee for the checking account deposits made by the Defendant wife that may have been used for unexplained expenditures.  For the reasons expressed below, the Court shall reduce the judgment previously awarded the Trustee by the amount of $73,960.00.

### I.

The Debtor, David I. Cohen, was an attorney for the now dissolved law firm of Titus & McConomy.  After the firm's dissolution, a lawsuit was commenced in state court by

00011980.WPD

the landlord of the law firm, TrizecHahn Gateway, LLC against Titus & McConomy and

its former partners including the Debtor.  Judgment in the amount of approximately $3.3

million dollars was entered in favor of TrizecHahn Gateway, LLC and the Debtor was held

jointly and severally liable along with several other Titus & McConomy partners.  As a

result of the judgment, several of the firm partners filed bankruptcy including the Debtor,

David I. Cohen.  Those bankruptcy cases and other adversaries similar to the subject

action brought by the respective trustees of those cases have been heard and decided by

other judges within this district.[1]

This matter originated out of the *Amended Complaint to Avoid Fraudulent Transfers*

filed by the Chapter 7 Trustee, Jeffrey J. Sikirica, seeking recovery of transfers pursuant

to the Pennsylvania Uniform Fraudulent Transfer Act.[2]  This Court awarded judgment in

favor of the Trustee in the amount of $488,615.79.  In so holding, it was found that

unexplained expenditures from the Defendants' joint checking account in the amount of

$463,575.08 were recoverable by the Trustee.  As to that amount, there was no evidence

---

[1] See In re Paul H. Titus, Case No. 10-23668, Böhm v. Titus (In re Titus), 467
B.R. 592 (Bankr. W.D. Pa. 2012) *aff'd in part, rev'd in part, remanded in part,* 498 B.R.
508 (W.D. Pa. 2013); In re Thomas D. Arbogast, Case No. 10-20237, Cardiello v.
Arbogast (In re Arbogast), 466 B.R. 287 (Bankr. W.D. Pa. 2012), *aff'd* 479 B.R. 661
(W.D. Pa. 2012), *aff'd* 533 Fed. Appx. 150 (3d Cir. 2013); In re Thomas C. Wettach, 05-
38188, Sikirica v. Wettach (In re Wettach), 489 B.R. 496 (Bankr. W.D. Pa. 2013); In re
David Oberdick, Case No. 08-20434, Shearer v. Oberdick (In re Oberdick), 490 B.R.
687 (Bankr W.D. Pa. 2013).

[2] In addition to the subject adversary, Objections to Exemptions filed by
TrizecHahn Gateway, LLC and the Chapter 7 Trustee are pending.  See Case No. 05-
38135-JAD, Doc. Nos. 49, 50.  Issues similar to those raised in the pending Objections
to Exemptions have been heard and decided in the case of Sikirica v. Wettach (In re
Wettach), 489 B.R. 496 (Bankr. W.D. Pa. 2013) and are presently pending on appeal.
The parties have agreed to a stay of further litigation on those Objections to
Exemptions pending the outcome of that appeal.  Further status conference on the
Objections to Exemptions has been scheduled for August 2014.

produced by the Defendants regarding what had been purchased with the funds deposited into the checking account.[3]

On appeal, the District Court found that the Trustee met his burden as to some but not all of the deposits being used for unexplained expenditures. See Cohen v. Sikirica (In re Cohen), 487 B.R. 615, 625 (W.D. Pa. 2013). It was held that this Court should not have required evidence to be produced that the funds deposited into the joint checking account attributable to Mrs. Cohen were used to fund the unexplained expenditures. The District Court followed the reasoning in Böhm v. Titus (In re Titus), 467 B.R. 592 (Bankr. W.D. Pa. 2012), *aff'd in part, rev'd in part, remanded in part*, 498 B.R. 508 (W.D. Pa. 2013). In Titus, it was determined that it was "at least as likely as not" that social security benefits of Mrs. Titus, the nondebtor wife, "funded an equal portion of the Objectionable Expenditures." 467 B.R. at 624. The Titus court accordingly held that the Trustee had not proven that it was wages of the Debtor that were used to fund the objectionable expenditures. Id.

The District Court in the subject Cohen appeal found that it was "as likely as not that the deposits attributable to Ms. Cohen were used to fund unexplained expenditures." Cohen, 487 B.R. at 625. Further, the court stated that the amount recoverable should not be reduced by the amount of unexplained deposits that are not the Debtor's wages as any such reduction would be an incentive for the Debtors to not provide information

---

[3] In the fraudulent transfer action brought in the bankruptcy of Paul H. Titus, it was determined that an expenditure must have been made on a necessity in order not to be at least a constructive fraudulent transfer. See Böhm v. Titus (In re Titus), 467 B.R. 592, 607 (Bankr. W.D. Pa. 2012); see also Cardiello v. Arbogast (In re Arbogast), 466 B.R. 287, 306 (Bankr. W.D. Pa. 2012)(direct deposits of compensation into joint checking account may be at least constructive fraudulent transfer unless spent on necessities.)

regarding the source of the deposits. <u>Id.</u>  The District Court then stated that "upon

remand, the amount of unexplained expenditures that the Trustee can recover should be

reduced by the amount of deposits attributable to Ms. Cohen." <u>Id.</u>

Since the remand, the parties have entered into a stipulation regarding the dollar

amount of deposits attributable to Mrs. Cohen during the relevant look back period.  The

parties stipulate that Mrs. Cohen's deposits totaled $73,960.00.  <u>See</u> Doc. No. 182.

**II.**

Upon remand for a determination of reduction in the Trustee's recovery, this Court

is now tasked with ascertaining the appropriate method for and amount of that reduction.

The Trustee argues that the findings of the District Court regarding the reduction in

amount were equivocal and subject to interpretation.  The Trustee urges this Court to

consider and adopt the reasoning of Judge Thomas Agresti in the case of another former

Titus & McConomy partner, David Oberdick.

In <u>Oberdick</u>, the Trustee brought a fraudulent transfer action against the Debtor

and his wife.  <u>See</u> <u>Shearer v. Oberdick (In re Oberdick)</u>, 490 B.R. 687 (Bankr. W.D. Pa.

2013).  In determining appropriate adjustments to the gross amount of deposits into the

Oberdicks joint checking account, the court considered other deposits made into the

account by Mrs. Oberdick.  The court followed the "dollar for dollar" reduction method

established by Judge Markovitz in the <u>Titus</u> case. <u>See</u> 490 B.R. at 710-711. However, in

a lengthy footnote, Judge Agresti expressed "some concern" regarding the dollar for dollar

approach in <u>Titus</u>.  He noted that:

> [I]t would seem to put nearly an impossible burden on the Trustee to show
> that a particular expenditure was 'funded' by a specific deposit, given that
> funds from different sources were commingled in a single account.  There
> is also a fairness issue in the *Titus* approach in that it was the defendants
> who created the uncertainty by commingling the funds, yet it is the Trustee

who is expected to somehow unravel it.  There are other possible ways to handle this 'other deposit' issue that would avoid the problems noted above. For instance, the burden of proof could be placed on the Defendants to show that funds from the other deposits were used for non-necessary expenditures from the Entireties Account.  Or a presumption could be employed whereby a pro rata share of the non-necessary expenditures could be deemed to have come from funds originating from the other deposits.

Id. at 711, n.15.

Following the pro rata approach suggested in Oberdick, the Trustee contends that there should be a presumption that only a pro rata share of the non-necessary expenditures came from funds deposited into the Cohen joint checking account by Mrs. Cohen.  Using such a method, the Trustee calculates the reduction by determining the percentage of deposits by Mrs. Cohen of all the deposits into the joint checking account and reducing the Trustee's award by no more than that amount.[4]

The Defendants argue that the judgment should be reduced by the full amount of deposits attributable to Mrs. Cohen and not merely a percentage.  It is argued that the District Court relied on the Titus case in its determination that the funds deposited by Mrs. Cohen should be deducted from the amount awarded for unexplained expenditures. The Titus case concluded that the entire amount from the spouse's funds, dollar for dollar, was deducted from the Trustee's claim for unexplained expenditures.  Moreover, it is argued, the approach in Titus was clearly articulated by the District Court as it specifically stated its agreement with the Titus reasoning that it was as likely as not that the deposits attributable to the nondebtor spouse were used to fund unexplained

---

[4] At the time of the filing of the Plaintiff's *Brief on Remand Regarding Deposits of Elaine Cohen,* the parties had not yet entered into their Stipulation regarding the amount of deposits of Mrs. Cohen.  Accordingly, the Trustee contended that the amount of deposits attributable to Mrs. Cohen was $62,268.86.  It was asserted that that amount of deposits would have resulted in an 8.17% of all deposits reducing the Trustee's award by no more than $39,919.91.  See Doc. No. 166 at 2.

00011980.WPD                                    5

expenditures.    Accordingly, the Defendants contend, the District Court intended a reduction of the full amount of deposits by Mrs. Cohen upon remand.

### III.

The Court has carefully considered the arguments of counsel and reviewed the Memorandum Opinion of the District Court and the language utilized therein.   The Memorandum Opinion states, as previously noted, that "upon remand, the amount of unexplained expenditures that the Trustee can recover should be reduced by the *amount of deposits* attributable to Ms. Cohen." Cohen, 487 B.R. at 625 (emphasis added).   In general, the first step in analyzing a writing such as a statute, rule, contract or other document is to analyze the plain language of the writing. See e.g., Alston v. Countrywide Fin. Corp., 585 F.3d 753, 759 (3d Cir. 2009)("[E]very exercise of statutory interpretation begins with an examination of the plain language of the statute.")   Where the language is clear and unambiguous, further inquiry is not required unless applying the plain language would lead to an absurd result.  See e.g., In re Resorts Int'l, Inc., 181 F.3d 505, 515 (3d Cir. 1999) citing Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 202 (3d Cir. 1998).   The role of the court is to then enforce the writing according to its terms. See e.g., Boston Univ. v. Mehta (In re Mehta), 310 F.3d 308, 311 (3d Cir. 2002) citing New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492 (3d Cir. 1996).   Although not engaging in statutory interpretation here, the Court utilizes the general framework; that is, an examination of the plain language of the document before it, the District Court Memorandum Opinion.

This Court does not find that there is any equivocation in the directive of the District Court as argued by the Trustee.  To the contrary, this Court finds that the plain language of the remand is clear.  The District Court stated its direction upon remand

00011980.WPD                                           6

immediately following its discussion of the Titus decision and those findings in that decision with which it agreed and disagreed.   It was in agreement with the Titus conclusion regarding the reduction in full for the nondebtor spouse deposits into the joint checking account.  In addition, had the District Court intended for a pro rata approach to be utilized, it could have said so.  It did not.  It called for a reduction of the *amount* of deposits, not *percentage* of deposits.  As pointed out by the Trustee, the District Court did not specifically cite the Titus language regarding an "equal" portion of the nonnecessary expenditures being funded by the nondebtor wife's deposits.  However, this Court does not interpret the lack of inclusion of this term as suggestive of something other than an equal reduction in damages or opening the door for alternative methods of determining the reduction of the Trustee's recovery.   Accordingly, this Court determines that the remand requires following the Titus decision and its dollar for dollar reduction in the Trustee's award for the deposits made by Mrs. Cohen.

The Court is further persuaded that this was the intent of the District Court since the Oberdick opinion in which the pro rata approach was discussed was not yet issued at the time of the District Court remand.  The District Court Memorandum Opinion was entered on February 28, 2013.  However, the Oberdick opinion was not issued until approximately one month later on March 27, 2013.  Although, as the Trustee argues, the District Court did not explicitly preclude the pro rata approach, it is likely that it did not do so because such approach had not yet been suggested.  Moreover, it is acknowledged in the Oberdick opinion that consideration would be given to an alternative approach to the treatment of the other deposits "[w]ere the Court writing on a blank slate . . . and free to do so".  490 B.R. at 711.  But the Oberdick court nevertheless followed the method adopted in Titus as it was employed not only in that case but also in this case and

affirmed on appeal.  Id.  Just as the court in Oberdick was not writing on a blank slate,

neither is this Court.  This Court is to follow the language and intent of the District Court

in accordance with its Memorandum Opinion.

**IV.**

For these reasons, the Court finds that upon remand the method to be used in

reducing the award of the Trustee is the dollar for dollar approach as established in the

Titus case.  The parties have now stipulated that the amount of deposits attributable to

Mrs. Cohen is $73,960.00.  Accordingly, the award previously entered in the amount of

$488,615.79 shall be reduced by the entire stipulated sum of $73,960.00.  An appropriate

order shall be entered.


Dated: April 7, 2014                                    /s/ Jeffery A. Deller
                                                       JEFFERY A. DELLER
                                                       Chief U.S. Bankruptcy Judge

case administrator to serve:

John P. Vetica, Jr., Esq.
Jeffrey J. Sikirica, Esq.
Robert O Lampl, Esq.
James R. Cooney, Esq.
Office of the U.S. Trustee